Tilghman C. J.
Both plaintiff and deféhdant in this ejectment, claimed under a location, dated 3d April, 1769, in the name of William Hunter., on which a survey was made 6th June, 1770, by Alexander M'Clean, deputy surveyor.
The plaintiff proved that the surveying fees had been paid by a certain Jonathan'Smith, deceased, and then offered in-evidence a deed from the s'aid William Hiiriter, to the said Jonathan '-Smith, dated 27th May, 1772,'acknowledged by the grantor', 30th Novebiber, 1809, before John Dickey, an associate judgé of the' Court of Common Pleas of Bedford-Cóunty,"and recorded in Westmoreland- county, 22d May¡ 1810:- This evidence was objected to by the counsel'for the" defendant, and rejected by the court. The objection is, that an associate judge of Bedford county, had'no right to take an acknowledgment of a deed conveying land in Westmoreland county. ‘ ■
- By the act of 13th April, 1791, sect. 10, acknowledgments of deeds- concerning lands in any part of the state, made be--' fore any associate judge of the Court of' Common'Pleas off any county, in the state, shall be as effectual as if the same were made before one of the judges of the Supreme-'Court, of before the president of any of the Courts- of Common Pleas'within this commonwealth. By the 2d section -of the-act óf -8th ii/jrz/,. 1785, acknowledgments'of. deéds!' t'Oncei-n- - ing lands in.any part of the state made before: the. president" off the Court of Common Pleas of any county -itt the: state,7 shall be as effectual as if the'samé were' made before ’one-of-the 'judges, of .the Supreme Court. The question then'is," what authority had the judges' of the Supreme" Court, as "to-taking acknowledgments of deeds ? By the •“ act for ácknow- - “ledging and-recording of deeds,” passed 28th May,X7l5,■ they maybe acknowledged before “ one of the justices of the I “peace of the proper county or city where the lands'lie.”- ItT has been the' constant practice for the judges off, the Supreme • Court, to. take acknowledgments under this act. This con- ' struction probably arose from the authority of the judges to aet as justices of the peace, so far as concerned'ci'iminal *106 matters, in every county in the state. Be that as it may, so "extensive and deep-rooted is the practice, that numerous titles depend on it, and it would be unpardonable to disturb it now by a critical examination of the words of the act. This point was fully considered in the case of De Lancey’s Lessee v. M'-Kean, first in the Circuit Court, and then in the Supreme Court of the United States. (5 Cranch, 22). The judges of the United States, being fully satisfied of the ancient and uniform construction which had prevailed in Penn~ sylvania, acquiesced in it, and determined an acknowledgment, before a judge of the Supreme Court, of a deed dated 7th December, 1772, to be good. The act of 18th March, 1775, directs, that all deeds made thereafter shall be acknowledged before a judge of the Supreme Court, or one of the justices of the Court of Common Pleas of the county where the lands lie; but makes no provision for acknowledgments of deeds made before, so that the law respecting them still depends upon the act of 1715. The deed in question therefore must be governed by the act of 1715. It appearing then, from what has been said, that a judge of the Supreme Court had power to take the acknowledgment, it follows that an associate judge of the Court of Common Pleas had the same power. I am of opinion, therefore, that the acknowledgment before John Dickey was good, and the court erred in not receiving it in evidence.
The counsel for the plaintiff afterwards offered in evidence a deed from Jonathan Smith to Samuel MiFerran, which was rejected by the court. The subscribing-witnesses were Owen Williams and James Bray. The death and hand writing of Williams were proved, and evidence was given, that the other witness had been searched for. It appeared to the court that sufficient search had not been made. The evidence was rather loose, and I will not say that the court was wrong in their decision. When the cause comes to trial again, the plaintiff must make it appear that he has used due diligence.
The counsel for the plaintiff then offered in evidence the deposition of William Hunter, in whose name the location was entered, in order to prove, that his name was made use of in trust for Jonathan Smith, and that he himself never had any interest in the land. This deposition went to prove also, that a conveyance which the deponant made to Robert Smith (under whom the defendants claim), dated 15th July, *107 1790, was without consideration, and in consequence of the said Robert’s telling him that the former deed to Jonathan Smith, whose right the deponent supposed to be vested in the said Robert, was lost, and a new deed was necessary in order to enable him to procure a patent for the land. This deposition was rejected by the court, and the counsel for the defendant in error contend, that it was not evidence, because no man shall be permitted to impeach his own deed. But this rule, which was introduced through policy, and is contrary to the general principles of the common law, is confined to negotiable instruments, such as bills of exchange, &c. as was decided by this Court, in the case of Baring assignee of Cutting v. Shippen, (2 Binney, 165). There the evidence of Cutting was admitted, in order to destroy his own assignment of a bond given to him by Mrs. Shippen, in trust to raise money for her use, which he fraudulently assigned to Baring, in payment of a debt due from himself. That case was decided by Judge Tates and myself, and had been before decided at the Circuit Court for Buck’s county, by the late Chief Justice Shippen and Judge Brackenridge. We were unanimous in confining the rule to negotiable instruments, and from that time I have considered the law as settled. Hunter had no interest in the cause, as he had not warranted the land, except against himself and his heirs. He was therefore a competent witness, and his deposition ought to have been received. My opinion upon the whole, is, that the judgment should be reversed, and a venire facias de novo awarded.
Ye ates J.
Previously to the act of 18th March, 1775, the justices of this Court uniformly received the acknowledgment of deeds, conveying lands in any of the counties of Pennsylvania, which was always deemed to entitle them to be recorded. It probably came into practice, in the first instance, from their being considered as justices of the peace throughout the government; but whatever was its origin, deeds acknowledged or proved before them, whether executed before or after the passing of that law, have always been received in evidence. The case in 5 Cranch, 22, fully recognises this usage, although I should not need that case in support of the position. The act of 13th April, 1791, gives the associate judges of the courts of Common Pleas the same *108 authority to take acknowledgments and probates, as was theretofore vested in the members of this Court: from whence it inevitably follows, that the deed from William Hunter to Jonathan Smith, acknowledged before an associate judge of the court of Common Pleas of Bedford county, on the 30th November, 1809, ought to have been allowed to be read to the jury.
It was incumbent on the plaintiffs to ancount for the absence of James Bray, one of the subscribing witnesses to th.e deed from Jonathan Smith to Samuel MiFerran, before they could read the same in evidence. The testimony given, does not warrant the conclusion, that due diligence was used to procure his attendance, or that proper search was made for him. Nothing is said by the witness of the result of his inquii-y for Bray, but the search was for James Bealty, who had. left that country many years before, but where he had gone, was wholly unknown. The plaintiffs therefore failed in their preliminary proof, and did not entitle themselves to show this deed in evidence.
The deposition of William Hunter ought to have gone to the jury. His bill of sale was not a negotiable instrument in a commerical case: nor, in fact, did his testimony go to invalidate his own deed of 1790, to Robert Smith, but to shew how it came to be executed, and it was in affirmance of his prior conveyance to Jonathan Smith, dated 22d May, 1772. He swore, that Jonathan Smith used his name in taking out the location with his full consent, and that he, himself, had no interest in, or claim to the lands, for which he executed a bill of sale to the said Jonathan,: and that Robert Smith, a good many years afterwards, represented to him, that the bill of sale had been lost or mislaid, and wanted another conveyance from him to supply the defect, which he gave to him. The name of Hunter was barely made use of in entering the application, and his testimony is corroborated by the early survey made on the 6th June, 1770, in the draft whereof it is called, “ Jonathan Smith in right of William Hunter, call- “ ed Spring Garden,” and the payment of the surveying fees on the 27th May, 1772, by the said Jonathan. Conducting a survey and paying the surveying fees, have frequently been, admitted as substitutes for deed poll, from persons in whose names the applications have been made, and have prevailed. Instead of a deception practised on Robert Smith, *109 he obtained the conveyance of 1790, by misrepresentation, in order to supply the loss of the first conveyance to his brother Jonathan, who was the true owner of the location, in whose name the land was surveyed at an early day, and who is supposed to have transferred all his interest to Samuel MiFer~ ran, in 1776. Hunter ceased to be a trustee, when he conveyed the location to Jonathan Smith, in May, 1772, for a nominal consideration, and no law then in force required this conveyance to be recorded. The legal and equitable title, thus became united in Jonathan Smith, and William Hunter could by no subsequent act impair it. If Robert, his brother, had bought of the original trustee, without knowledge of the prior deed, he would have purchased at his own risk and peril; but he stood in a very different predicament, and knew all the circumstances of the case. I can see nothing whatever in the deeds and papers shewn in evidence on the part of the defendant, which could preclude the deposition of William Hunter from being read to the jury: and upon the whole matter, I am of opinion, that the judgment below should be reversed, and a venire facias de novo be awarded.
Brackenridge J* concurred.
Judgment reversed, and a venirefacias de novo awarded.