THE STATE EX REL. DUNLAP, Appellant, vs. NOHL,
Respondent.

*January 9—January 28, 1902.*

*Municipal corporations: Constitutional law: Delegation of legislative
power: Ordinances: Punishment of violations: Justices' courts:
General city charter: Police courts: Jurisdiction: Judgments:
Forfeitures: Official direction to commence action, when nec-
essary: Unlicensed dogs: Pleading: Immaterial errors: "Ad-
journments:" Entry on docket: Enacting clause of ordinance.*

1. Sec. 1, ch. II, of the charter of Ripon (ch. 72, P. & L. Laws of
   1858) provided for one justice of the peace in each ward and
   conferred on them such powers and duties "as are prescribed in
   this act, or as may be prescribed in any ordinance of said city,
   not inconsistent with said act, or which may not be incompati-
   ble with the nature of their respective offices;" and sec. 3,
   ch. IV, conferred upon the council power to make and amend
   "all such ordinances, rules and by-laws for the government and
   good order of the city, for the suppression of vice and immor-
   ality, for the prevention of crime, and for the benefit of trade,
   commerce and health, as they shall deem expedient; declaring
   and imposing penalties, and to enforce the same," etc.  *Held*,
   that the common council of said city had power, by ordinance,
   to vest in the justices of the peace authority to entertain suits
   for breaches of such ordinances and recovery of the penalties
   thereby imposed.

2. Said charter provisions cannot be *held* to be an unlawful delega-
   tion of the legislative power vested by the constitution in the
   state legislature, since in creating subordinate political sub-
   divisions, the legislature may delegate power to legislate over
   minor and detail subjects of local government.

3. An ordinance of said city providing that "the justices of the
   peace within said city shall have cognizance and jurisdiction
   of all offenses against the ordinances of said city, and shall
   have power to give judgment and issue executions thereon for
   any and all penalties and for forfeitures under the same," is
   an exercise of the power, given by sec. 1, ch. II, and sec. 3,
   ch. IV, of said charter.

4. Said ordinance created courts having the same jurisdiction as
   the police courts designated, in and upon which, by the gen-
   eral charter (sec. 925—65, Stats. 1898), are conferred "the civil

and criminal jurisdiction of a justice of the peace within the limits of such city and exclusive jurisdiction of offenses against the ordinances of the city." Such justices' courts therefore continued in existence, after the adoption by the city of the general city charter, by virtue of sec. 925—61, continuing the jurisdiction of courts or magistrates existing at the time of its adoption by any city in which there was a court or magistrate having the jurisdiction of police justices conferred by sec. 925—65.

5. In such case, after the adoption by the city of the general city charter (ch. 40a) while such ordinance continued in force, the jurisdiction of the justices of the peace under said ordinance could be destroyed only in the manner specified in the general city charter or by new legislation, and could not be defeated by the repeal of that ordinance.

6. In such case, a judgment of a justice of the peace, in a prosecution for an offense against an ordinance of said city, simply adjudging that the defendant pay a penalty and the costs of the action, does not raise the question whether the justice had power to enforce his judgment by imprisonment in accordance with the general city charter (sec. 925—67, Stats. 1898).

7. An ordinance conferring jurisdiction upon justices of the peace of the city over offenses against city ordinances includes not only such ordinances as existed at the time such jurisdiction was conferred, but any others legally enacted, including such as were enacted after the adoption of the general city charter.

8. Sec. 3298, Stats. 1898 (providing that no action to recover a forfeiture shall be brought before a justice of the peace except by direction of certain specified officers), applies only to forfeitures authorized to be sued for in the name of the state, and does not apply to actions for the enforcement of ordinances in cities existing under the general city charter.

9. In a complaint charging violation of a city ordinance, denouncing a penalty against "every person who shall own or have in his possession in this city an unlicensed dog," it is not necessary to allege that the defendant is a resident of the city.

10. It is not necessary in such a case that the complaint allege that at the time it was sworn to the defendant had a dog in his possession; the complaint is sufficient if it appears therefrom that the defendant had such a dog on a day within the period of the statute of limitations.

11. Sec. 925—69, Stats. 1898, prescribes the form of complaint in an action to recover a penalty for violation of the ordinance of a city existing under the general city charter, and the allegation

of a complaint, otherwise complying to such form, that the offense was to the damage of affiant, is mere surplusage, and does not overcome the fact that all which the statute requires is sufficiently set forth.

12. A reasonable construction of the word "adjournment" in sec. 3574, Stats. 1898, requiring justices of the peace to enter upon their docket every adjournment, stating at whose request, etc., excludes necessary intermissions for the purpose of obtaining food and sleep, which are not subject to the requirement that they be entered upon the docket with particularity.

13. In an action pending in justice's court, a recess was taken from July 25th to the morning of July 26th. The record showed that the proceeding involved questions that might well have occupied a whole day in argument. *Held*, the recess being apparently for food, rest, or sleep, that jurisdiction was not lost by reason thereof without other cause, or without entering upon the docket the fact of a request therefor by either party.

14. The fact that the enacting clause of an ordinance adopted by a city, incorporated under the general city charter, reads, "the mayor and common council" do ordain, instead of "the common council" do ordain, as required by sec. 925—49, Stats. 1898, sufficiently asserts that the common council has ordained, and is not rendered insufficient by the assertion that the mayor has added his sanction thereto.

15. BARDEEN, J., dissenting, is of the opinion that as no one justice of the peace of the city of Ripon had exclusive jurisdiction of offenses against its ordinances, it was the duty of the city to proceed under the general charter law to the election of a police justice, and not having done so, and the ordinance conferring jurisdiction on the justices of the peace of said city having been repealed before the action was brought, the procedure adopted did not justify the judgment.

APPEAL from a judgment of the circuit court for Fond du Lac county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

The appellant having been convicted before one of the justices of the peace of the city of Ripon, under an ordinance enacted in 1898 imposing a penalty upon "every person who shall own or have in his possession in this city any unlicensed dog," procured to be issued from the circuit court for Fond du Lac county a common-law writ of *certiorari* to review the

validity of such judgment. The justice made return of the proceedings, showing that appellant was arrested upon affidavit dated July 21, 1899, of one Patsy Braun, not alleged to be an official or have any special authority, charging the relator with disobedience of such ordinance, in that, on July 10, 1899, he had in his possession in said city a dog on which no license had been paid for the current year; that, after plea of "not guilty," by consent the matter was adjourned to July 25, 1899, on which day the plea of "not guilty" was withdrawn, and a motion made to quash the proceedings upon five different grounds, which were argued, and the motion overruled. Thereupon the complaint was permitted to be amended so as to allege that the damage was to the city of Ripon instead of to the affiant, when a recess was taken until 9 a. m., July 26th, leaving appellant in the hands of the officer. July 26th the trial of the case proceeded without a jury, and appellant was convicted, and adjudged to pay a penalty. This return was supplemented by a stipulation bringing in the ordinances of the city of Ripon material to the controversy. That city was incorporated by ch. 72, P. & L. Laws of 1858, and in 1894 adopted the general charter, and became a city of the fourth class thereunder. The grounds upon which the jurisdiction is assailed and further facts material thereto will appear by the opinion. The judgment of the justice was affirmed by the circuit court, and the relator appeals from such affirmance.

For the appellant there was a brief by *Carter & Pedrick*, and oral argument by *S. M. Pedrick*.

For the respondent there was a brief by *Morse & MacDonald*, and oral argument by *R. L. Morse*.

Dodge, J. Appellant's most important contention is that the justice of the peace had no jurisdiction of a suit to enforce a penalty for breach of an ordinance, for the reason that the general charter vests that jurisdiction in police courts;

that the clause in the general charter (sec. 925—61, Stats. 1898), which continues the jurisdiction of courts or magistrates existing at the time of its adoption by any city in which there was a court or magistrate having the jurisdiction by the general charter conferred on police courts, has no application, because no such court existed in the city when the general charter was adopted by it. The jurisdiction of police courts, according to that charter (sec. 925—65, Stats. 1898), is:

"The civil and criminal jurisdiction of a justice of the peace within the limits of such city and exclusive jurisdiction of offenses against the ordinances of the city."

The justices of the peace existing under the old charter in the city of Ripon were exercising jurisdiction under ordinance No. 4, adopted May 11, 1858, which provided:

"The justices of the peace within said city shall have cognizance and jurisdiction of all offenses against the ordinances of said city, and shall have power to give judgment and issue executions thereon for any and all penalties and for forfeitures under the same."

That the jurisdiction thus attempted to be conferred upon these justices was the substantial equivalent of that conferred by the general charter upon police justices is not seriously questioned, but it is asserted that such ordinance was wholly ineffectual, first, for the reason that no power to enact it was sought to be conferred upon the city of Ripon by its charter; and, secondly, because it would have been incompetent for the legislature to delegate that power had such delegation been attempted.

The original charter of the city of Ripon (ch. 72, P. & L. Laws of 1858) by sec. 1, ch. II, defined the officers of the city; amongst others one justice of the peace for each ward, and provided: "They shall have such powers and perform such duties as are prescribed in this act, or as may be prescribed in any ordinance of said city, not inconsistent with said act, or which may not be incompatible with the nature of their respective offices;" and by sec. 3, ch. IV, conferred upon the

council the power to make and amend "all such ordinances, rules and by-laws for the government and good order of the city, for the suppression of vice and immorality, for the prevention of crime, and for the benefit of trade, commerce and health, as they shall deem expedient; declaring and imposing penalties, and to enforce the same against any person or persons who may violate any of the provisions of such ordinance, rule or by-law, and such ordinances, rules and by-laws are hereby declared to be and have the force of law." There is no further charter provision in any wise granting or restricting powers of justices of the peace, except that they, in connection with certain other city officers, are constituted peace officers, with power and duty to suppress rioting and disturbances. Sec. 9, ch. III.

We are unable to avoid the conviction that, if the legislature were competent so to do, it did by these provisions confer upon the common council power by ordinance to vest in its justices of the peace authority to entertain suits for breaches of ordinances and recovery of penalties thereby imposed. While it might well be questioned whether the general power to enact ordinances for the welfare of the city was intended to extend to this subject, the provisions of sec 1, ch. II, seem to put that purpose beyond question. The language of that section is entirely sufficient literally to justify the council in imposing on the justices of the peace the power and duty of such enforcement, and, if that was not the purpose, there is vested nowhere, expressly, the power to give judicial aid to the enforcement of such ordinances as might be necessary.

But it is contended that this is such delegation of the legislative power, vested by the constitution in the state legislature, as to be invalid. From the earliest times it has been held that the doctrine that the state legislature may not delegate the legislative power conferred upon it by the constitution is subject to the limitation that, in creating subordinate political divisions of the state, it may delegate to the govern-

ment of those subdivisions power to legislate over minor and
detail subjects for local government. It is only by reason of
that limitation that school-district boards, town boards, county
boards, and city councils exercise any discretion or delibera-
tion in their respective provinces. From the constitutional
authority to organize and create municipal corporations is
implied the power to delegate to them enough of the legis-
lative power to regulate such minor and local subjects as are
necessary to the efficacy; indeed, to the very purpose of those
corporations. See Horr & B. Mun. Ord. ch. 1; Dillon, Mun.
Corp. (4th ed.), §§ 21, 58, 308. Under this implied author-
ity to the legislature to delegate and confer legislative powers,
there are, of course, various limitations. The acts of such
subordinate legislatures can have no validity if they con-
flict with any of the higher forms of law, such as the federal
or state constitution, or general laws unavoidably inconsistent
therewith, and it is also requisite that they should be con-
fined to the field germane to that purpose which serves to
justify the delegation at all. They must pertain to local sub-
jects,—those which affect the particular community placed
under corporate government,—as distinct from the people of
the state at large. They are well defined as rules "obligatory
over a particular district, not being at variance with the
general laws, and being reasonably adapted to the purposes
of the corporation." Dillon, Mun. Corp. (4th ed.), 387, note.
Within this field, however, it is difficult to define in advance
any limit upon the power of the legislature to refer questions
of local control and government to the corporations it may
create. In this view it is not easy to discover any reason
why, in an ordinance imposing a duty, a provision for the
method of enforcement of that ordinance is not quite as
local and corporate in its character as its other provisions. In
the older corporations of the country, the custom in enacting
ordinances was to provide in the individual ordinance a
method of enforcement, and a designation of the officer or

officers upon whom the duty and power of enforcement was conferred. There is no difference in principle between a general ordinance making provision with reference to enforcement of all and such a provision in each. Thus, an ordinance prohibiting estray horses upon the public streets may either contain in itself a provision that the constable shall have the duty and authority to take up and impound such estrays, or that duty and authority may be imposed upon him by an independent ordinance, relating generally to all prohibited estrays upon the streets. So an ordinance denouncing a penalty, and providing that that penalty may be recovered by suit before a justice of the peace, is not different in principle from a general ordinance that all penalties may be so recovered. No case has been presented to us passing upon the direct question whether the legislature might or might not delegate to municipalities the power to impose upon their local courts or judicial officers the duty and authority to enforce their ordinances by judgments, and but two or three instances of attempts thus to do by the corporation have come to our notice. In those the attempts have been held ineffectual, but upon the ground that the power had not been conferred by the legislature, with strong implication that, had it been so conferred, the act of the corporation would have been valid. In *Barter v. Comm.* 3 Pen. & W. 253, the city of Lancaster enacted an ordinance prohibiting interference with public pumps, and denouncing a penalty, and authorizing the same to be enforced by judgment of the mayor, any aldermen, or any justice of the peace. This latter provision was held invalid because the charter created a mayor's court, which it vested with exclusive jurisdiction over such subjects. But this decision was made with an apparent recognition of the rule that "a corporation may provide by its inherent powers for the recovery of a penalty from its own members by action of debt in its own court," as stated by LORD MANSFIELD in *Hesketh v. Braddock*, 3 Burrows, 1847, 1858. In *Staats v. Washington*, 45 N. J. Law,

318, 325, an ordinance denounced a penalty on conviction before the mayor or any justice of the peace. The charter limited the recovery of such penalty to an action before any justice of the peace residing in the county. The court said that the ordinance "might lawfully authorize such penalty to be collected in an action of debt before a justice of the peace of the county. . . . The ordinance is clearly erroneous in giving authority to take the proceeding to collect the penalty before the mayor." Apparently the court held that, while the charter conferred jurisdiction upon any justice of the county, the ordinance might provide for its own enforcement before specific justices, such as those of the borough merely, although this is not entirely clear. In *Hesketh v. Braddock, supra,* an ordinance of the corporation of Chester against strangers conducting certain retail business provided that its penalty might be recovered before the *portmote* court, which was in fact held by the mayor. The corporation alleged a custom by which it was empowered to confer such jurisdiction upon its own court. Lord MANSFIELD said:

"In the regulation of their own members they may indeed make by-laws, and enforce the observance of them by prosecutions amongst themselves."

The by-law was held not to support the action in that case, because suit was against a stranger, who thereby was subjected to a partial and interested court, contrary to the principles of Magna Charta. The case, however, seems to support the idea that by a custom, or its equivalent, a statute, the power to confer jurisdiction over the enforcement of ordinances may be vested in the corporation. Dillon, in his work on Municipal Corporations, treats the selection of magistrates or officers who are to enforce ordinances as purely local; so much so, indeed, that he doubts whether the giving of such jurisdiction even amounts to a conferring of any of the judicial power, or constitutes its recipient a judicial officer, within the constitutional restrictions. Dillon, Mun.

Corp. §§ 58, 426, *et seq.*, especially note foot of page 493. That it does not is declared in *Shafer v. Mumma,* 17 Md. 331. The last question need not trouble us here; for, if it be a conferring of judicial power, a justice of the peace is by the constitution enabled to receive it.

The question before us is not whether to the corporation may be delegated power to legislate as to the jurisdiction generally of one of the judicial officers of the state. The act of the legislature itself creates the justices of the peace, and thereby necessarily invests them with all the jurisdiction belonging to such officers and it is to be noticed that the city made no attempt to legislate on that subject. The justices of Ripon have exercised their general jurisdiction from the beginning without authority from, or restriction by, the corporation. The only question is whether the city may select them from among the other city officers to enforce such ordinances as denounce penalties and inferentially necessitate a hearing and judgment for their enforcement. We cannot avoid the conclusion that such an act is entirely local in its character, that it relates only to the peace and welfare of the community incorporated, and not of the state generally, and that the corporation may properly be given power to legislate thereon. This view seems to receive inferential support from *Ogden v. Madison,* 111 Wis. 413, where, after full deliberation and exhaustive review of the authorities, it was decided that enforcement of penalties denounced· by corporate ordinances does not involve the administration of the criminal laws, and is not controlled by the constitutional requirement of jury trial. The whole subject is described in a Colorado case, there quoted with approval, as so "petty" and "local" that the city may be authorized to deal with it by ordinance. *McInerney v. Denver,* 17 Colo. 302. In *State v. Bartlett,* 35 Wis. 287, this court held that the selection from several justices of one who should have the additional jurisdiction to try offenses against the

ordinances of a city might properly be delegated to corporate authorities.

Our conclusion is that the legislature might and did delegate to the city of Ripon power to confer on the justices of the city jurisdiction over offenses against its ordinances; that the city did by ordinance 4 confer that jurisdiction; that at the time of the adoption of the general charter, in 1894, it was enjoyed by these justices in addition to their general jurisdiction resulting from their creation as justices of the peace; hence that courts and magistrates did exist in the city of Ripon having the same jurisdiction as police justices under the general charter, and were continued in existence thereby. The respondent, therefore, had jurisdiction of the subject matter of the proceeding to enforce the penalty denounced against keepers of unlicensed dogs.

This conclusion is sought to be averted on several other grounds. It is shown that ordinance No. 4 was expressly repealed in 1899, before this prosecution was commenced; hence counsel argues that since the jurisdiction of the justice depended on that ordinance it had been terminated. This argument rests upon a fallacy. The respondent's jurisdiction after 1894, when the general charter was adopted, was conferred, not by any ordinance, but by that charter, which continued to him the same jurisdiction which he had at the time of its adoption. The ordinance, having persisted in force up to that time, became *functus officio*, and his jurisdiction could, after 1894, be destroyed only in the manner specified in the general charter or by new legislation. It had then been withdrawn from the control of the common council.

A somewhat extended argument is made to the proposition that, as the justice's jurisdiction was not enlarged by the adoption of the general charter, he acquired no power to enforce his judgments, in accordance with sec. 925—67, Stats. 1898, by imprisonment. This is a very broad use of the word "jurisdiction." The argument would seem cogent that, hav-

ing jurisdiction of suits for the enforcement of ordinances, the method of execution might be changed by the statute; but that question is not before us upon this record. The judgment rendered by the justice contains no attempt to provide how it shall be enforced or to exercise any power under the last-cited section. It is, simply, that the defendant is adjudged to pay a penalty of $5 and the costs of the action.

Another assault upon the jurisdiction is based upon the failure of the old city charter to give the city power to license dogs. This, however, is immaterial; for the ordinance under which this action was commenced was enacted in 1898, after the adoption of the general charter, which, by sec. 925—52, subd. 18, 19, Stats. 1898, did give authority to license dogs, as well as to prohibit and punish their running at large. The jurisdiction was of all offenses against ordinances of the city, which, of course, must include not alone those existing at the time the jurisdiction was conferred, but any others legally enacted.

Further objection is made for that it does not appear by the complaint that the person making it had any authority to institute the suit from any of the officers specified in sec. 3298, Stats. 1898. That section, however, is confined to forfeitures authorized to be sued for in the name of the state, and which are not controlled by other special provisions of law. It does not apply to actions for the enforcement of ordinances in cities existing under the general charter, which is itself a special provision of law, directing such actions to be instituted in the name of the city, and sufficiently regulating their procedure, and evidently intended to cover the entire subject.

2. Jurisdiction is further assailed for the reason that the complaint does not allege that any offense was committed. This is predicated upon three alleged defects.

(a) It is asserted that the complaint is defective in not alleging that the defendant is a resident of the city of Ripon, which, appellant contends, is an essential element of the of-

fense punished by the ordinance. This criticism is without foundation. The penalty is denounced by sec. 2 of ordinance 140 against "every person who shall own or have in his possession in this city an unlicensed dog." In this there is no requirement that he shall be a resident. True, sec. 1 of the same ordinance, which authorizes the licensing, confines that authority to residents. This, however, is in no wise inconsistent with the liability of any person, resident or not, who shall imperil the safety of the city or its inhabitants by owning or having therein an unlicensed dog.

(b) Insufficiency of the complaint is further predicated upon the fact that it does not allege that at the time it was sworn to, July 21st, the appellant had a dog in his possession. The complaint does allege that on July 10th, eleven days before, he did so. That alleges a complete offense, for which the ordinance imposes a penalty. He is not rendered guiltless of that offense by the fact that he did not commit a similar one on some other day. Having committed the offense, he might be proceeded against therefor at any time within the period of the statute of limitations.

(c) The complaint is further assailed for that being made by one Patsy Braun, with no alleged official character, it concludes with the assertion that the offense is to the damage of the affiant. This mistake was attempted to be cured by amendment, but we think it immaterial, for the statute (sec. 925—69, Stats. 1898) prescribes a form of complaint which contains no assertion as to who is damaged by the offense. The allegation in the form used in this case is therefore mere surplusage, and does not overcome the fact that all which the statute requires is sufficiently set forth.

3. It is claimed that the justice lost jurisdiction by taking a recess from July 25th to July 26th. It appears that the proceeding was assailed by motions involving questions which might well have occupied the whole day in argument. The power of a justice court to yield to physical impossibility

when a case before it cannot be finished in a single day is recognized and declared in *Hepler v. State*, 43 Wis. 479, wherein it is said the necessary length of the case would be cause for its continuance from day to day. The remarks there made are directly applicable to the objection under consideration. If it be physically impossible that the case be finished in one day, it must have been the intent of the statute builders that its hearing should continue until it can be finished. The purpose is to require immediate and continuous hearing, and that there shall be no adjournment except for cause. As said by RYAN, C. J., in the case last cited, these provisions and the words used must receive a reasonable construction. The word "adjournment" cannot have been intended to include, and therefore prohibit, those intermissions and recesses physically necessary, in the course of a protracted hearing, for food or sleep. Such events do not interrupt the continuity of a trial; they do not constitute a postponing of the trial from one time to another. It would be absurd to provide that at a meal hour the court cannot suspend his attention long enough to eat, or, night having come, long enough to sleep; yet, if such suspension constitute an adjournment, it is forbidden by sec. 3574, unless one party or the other request it, so that the docket may be made to show such request. *State ex rel. Dearborn v. Merrick*, 101 Wis. 162. The only reasonable construction, therefore, of the word "adjournment" in the statutes must be such as to exclude such intermissions and recesses as above described, which therefore are not subject to the requirement that they be entered on the docket with the particularity demanded for adjournments. *French v. Ferguson*, 77 Wis. 121. The recess from July 25th to the morning of July 26th would appear to have been of this character, and jurisdiction was not lost by reason thereof without other cause, or without entering upon the docket the fact of a request therefor by either party.

4. Ordinance No. 140, imposing penalty enforced in the

proceeding under review, is claimed to be invalid for the reason that its enacting clause reads, "The mayor and common council of the city of Ripon do ordain as follows," while sec. 925—49 provides that the style of all ordinances shall be, "The common council of the city of ——— do ordain as follows." We think the variance is immaterial. The caption sufficiently asserts that the common council has ordained, and that assertion is not rendered insufficient by the assertion that the mayor has added his sanction thereto.

We find nothing in the record showing want of jurisdiction in the respondent to render the judgment questioned, and its affirmance by the circuit court was not error.

*By the Court.*—Judgment affirmed.


BARDEEN, J. The difficulty I have in agreeing with the opinion in this case arises from the construction given to sec. 925—61, Stats. 1898. At the time of the adoption of the general charter, the city of Ripon had no "court or judge" having the jurisdiction conferred upon police courts by such charter. At that time the authority to enforce penalties prescribed by the ordinances of the city had been given by ordinance to the justice of the peace elected in the city. Admitting, with considerable hesitation, that such authority was legally conferred, we have this situation: The old city charter provided for the election of a justice of the peace in each ward. The city was divided into two or more wards. By the ordinance of 1858 the justices of the peace within the city were given cognizance and jurisdiction of all offenses against the ordinances. So, at the time of the adoption of the general charter, there were two or more justices in the city having jurisdiction over offenses against ordinances. No one had exclusive jurisdiction of such offenses. Sec. 925—61 says:

"In every city which shall adopt this chapter for its government and which shall at the time of such adoption have a

court or judge, by whatsoever name or title such court or judge shall be called, having the jurisdiction herein conferred on police courts, the jurisdiction and procedure of such court or judge shall continue unaffected by this chapter until such court or the office of such judge shall be abolished, and in the meantime no police justice shall be elected and no police court established in such city under this chapter."

I cannot persuade myself, nor am I persuaded by the opinion herein, that it was the legislative intention to perpetuate the condition of things then existing in the city of Ripon. The manifest object of the section quoted was not to interfere with or legislate out of existence police courts or courts of like kind that had been established under special charters. Many of the earlier charters, and almost all of the later ones, created police courts, or gave jurisdiction to municipal courts, to hear and try cases arising under local ordinances. The idea of the statute was not to drive such courts out of existence. The purpose was not to preserve jurisdiction to justices of the peace, but to save courts that might otherwise be crowded out of existence. Where such courts did not exist, the city adopting the new charter was to proceed to the election of a police justice, whose term of service and duties were defined in the law. To my mind, this was clearly the duty of the city of Ripon. At the very longest, the jurisdiction of the several justices could not outlast the ordinance which gave them authority. The repeal of that ordinance in 1899 left the justices of the city without any colorable right to proceed against the relator, unless it was done under the general law. The procedure adopted seems not to have been in conformity to those requirements, and hence cannot justify the judgment rendered.