STATE EX REL. EKERN, Attorney General, Respondent, vs. CITY OF MILWAUKEE, Appellant.

*May 17—July 20, 1926.*

*Municipal corporations: Home-rule amendment: Matters of state-wide or of local concern: Ordinance regulating height of buildings: Validity.*

1. It is clearly within the power of the people to shift from the policy of standardizing city governments to that of the home-rule amendment to the constitution, giving home rule to cities; and the courts must liberally construe such legislation. p. 637.

2. Such amendment to the constitution (sec. 3, art. XI) makes a direct grant of legislative power to municipalities, and also

limits the legislature in the exercise of its general grant
of legislative power in sec. 1, art. IV, Const.  pp. 637, 638.

3. The term "local affairs" in sec. 3, art. XI, Const., empowering
cities to determine their local affairs, should be liberally con-
strued, looking toward virility rather than impotency.  p. 639.

4. The maximum height of buildings in a city is a local affair
within the field of legislative powers granted to cities by
sec. 3, art. XI, Const., as so amended, though such affair
may also be of state-wide concern; and in this case the de-
fendant city of Milwaukee, under sec. 66.001, Stats., properly
elected not to be bound by sec. 343.461.  p. 639.

5. Under the home-rule amendment there remain matters of state-
wide concern as to which no independent legislative power is
granted to municipalities, such as schools, health, transpor-
tation, and crimes.  p. 639.

6. Matters affecting the state remotely and indirectly and at the
same time affecting individual municipalities directly or in-
directly are local affairs under the home-rule amendment.
p. 640.

7. For a matter to be a local affair of a city or village it must
be such an affair or subject matter as grows out of and is
presented because of it being such a city or village as dis-
tinguished from a rural or pastoral community.  p. 640.

8. Although the height of buildings in cities is of state-wide con-
cern under the rule that health and safety regulations are
for the people of the community at large, yet the height of
buildings in a particular community is a problem and affair
more directly concerning the inhabitants of that community
than the casual visitor or the other parts of the state, and is
therefore a local affair of that community within the amend-
ment.  p. 640.

APPEAL from an order of the circuit court for Milwau-
kee county: CHESTER A. FOWLER, Judge.  *Reversed.*

This is *quo warranto* brought by the attorney general
of the state against defendant, a city of the first class, to
test the validity of its ordinance which purports to declare
its election that sec. 343.461, Stats. (ch. 424, Laws of
1923), limiting the height of buildings in cities of the first
class to one hundred and twenty-five feet and to one hun-
dred feet elsewhere, shall not apply to it, and which ordinance
also permits a higher maximum height.  This election was

made under sec. 66.001 (ch. 198, Laws of 1925), being the procedural statute to give effect to, and as directed in, the home-rule amendment to sec. 3, art. XI, Const., ratified and adopted in November, 1924.

Defendant's demurrer being overruled, it appeals.

*John M. Niven,* city attorney, and *Clifton Williams,* special assistant city attorney, for the appellant.

A brief on behalf of the appellant was also filed by *Irving A. Fish* of Milwaukee, as *amicus curiæ.*

*M. B. Olbrich,* of Madison, special counsel, for the respondent.

ESCHWEILER, J.   An opinion and mandate affirming the ruling below has been entered in this case.   The important and far-reaching effect of a decision on such a constitutional amendment and doubts arising at and since the time of consultation led to its further consideration, and the court has now reached a conclusion requiring a contrary disposition of the case, and therefore we now withdraw the first mandate and opinion and make the present change before the case leaves our control; feeling that the court, as heretofore expressed (*State ex rel. Postel v. Marcus,* 160 Wis. 354, 381, 152 N. W. 419), is ready at all times to subordinate any possible though unjustifiable pride of opinion to a justifiable pride in trying to decide rightly.

There is here presented and alone decided the narrow question whether or not the subject matter of the maximum height of buildings in a city is so a matter of a city's "local affairs and government" as to be within the letter and intent of the direct grant of legislative power to municipalities by sec. 3, art. XI, Const., as amended, and which, so far as here material, reads:

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such en-

actments of the legislature of state-wide concern as shall with uniformity affect every city or every village."

Continuously and from territorial days special acts of the legislature granted charters of incorporation to cities, villages, and towns. Private and local laws vastly exceeded in volume the general laws. These special and local laws multiplied so rapidly and the increase in, or abuses of, special legislation had so grown that at the general election of 1871 secs. 31 and 32 were added to art. IV, Const.; sec. 31 prohibiting special or private laws on nine different subject matters, the ninth prohibiting such legislation for the incorporating of any town or village or to amend the charter thereof; sec. 32 providing for general laws to take the place of such special legislation and that such general laws must be uniform in their operation throughout the state. Twenty-one years later said sec. 31 was further amended by adding the word "city" in said ninth clause. By this time, 1892, there had been granted by such special acts separate charters for many cities, villages, and towns, and very many of such charters had been amended time and again by other special acts. Then, in evident recognition of the difficulties, if not dangers, presented by such multiplicity and variety in form and details of such charters and the consequent confusion, a long-continued effort was made during successive legislatures by amendments to the general law to standardize the government of Wisconsin cities (allowing, nevertheless, wide selection of choice by the electors thereof as to many of the forms and methods of such government), and culminating in the general city charter law, ch. 62, Stats. (ch. 242, Laws of 1921), repealing all the then existing forty-nine special city charters except one. So that by 1921 the pendulum marking the public policy of the state in that regard had swung to the point where there was but one special charter city, viz. Milwaukee, and all other cities, viz. of the second, third, and

fourth classes, and aggregating about one hundred and thirty (see Revisor's Introduction to Stats. 1919, p. 11), were under one general, uniform charter law.

Notwithstanding this history and that a proposed constitutional amendment to give cities and villages power to adopt new or to amend charters (subject to the constitution and general laws) was defeated by an almost two-to-one vote at the general election in 1914 and renewed propositions to so amend were rejected by the legislatures of 1915 and 1917, the session of 1921, which had adopted such general charter law, by joint resolution proposed this very home-rule amendment to sec. 3, art. XI, which has the evident purpose of permitting a return to the old system of multiplying variations in city and village governments, except that now the kaleidoscope is to be shifted by the respective municipalities rather than by the legislature.

However inconsistent such two positions may seem, viz. one a long striving to obtain uniformity, the other a sudden jump into the old lack thereof, still it is clearly within the power of the people to so shift if they so please, and it is clearly judicial duty to liberally construe (see *Browne v. New York,* 241 N. Y. 96, 112, 149 N. E. 211) such an expression of the will of the people, whatever might be our opinion as individuals of the wisdom or value, in the light of the state's history, of such an amendment.

We consider that this amendment accomplishes two, in some measure, distinct things.

First, it makes a direct grant of legislative power to municipalities, so that such powers are now held by express grant in and by the constitution, whereas formerly any such power was held solely through and by the legislature, which might give, amend, or take away. *State ex rel. Mueller v. Thompson,* 149 Wis. 488, 493, 137 N. W. 20; *State ex rel. Wis. Tel. Co. v. Sheboygan,* 111 Wis. 23, 38, 86 N. W. 657; *Milwaukee v. Raulf,* 164 Wis. 172, 179, 159

N. W. 819; *Town of Milwaukee v. City of Milwaukee,* 12 Wis. 93, 100; *State ex rel. Dunlap v. Nohl,* 113 Wis. 15, 21, 88 N. W. 1004; *Matter of McAneny v. Board of Estimate,* 232 N. Y. 377, 391, 134 N. E. 187; *Trenton v. New Jersey,* 262 U. S. 182, 187, 43 Sup. Ct. 534.

Second, it limits the legislature in the exercise of its general grant of legislative power (or the expressed recognition thereof), found in sec. 1, art. IV, Const.

It does the first by expressly giving cities and villages the power "to determine their local affairs and government;" it does the second by limiting to an extent, not now necessary to determine, the legislature in its enactments in the field of local affairs of cities and villages.

The probable hopes of the ardent advocates of the home-rule idea—to see municipalities divorced from the legislature, and separate sovereigns within a sovereign state—are destined to many a rude shock; but the thorny path before them and the probability of its terminating in something of a cul-de-sac was prophesied and elaborated upon by Mr. Justice TIMLIN in his concurring opinion in *State ex rel. Mueller v. Thompson,* 149 Wis. 488, 498, 137 N. W. 20, *supra.*

The exact boundary lines of the field of the "local affairs" of cities or villages we shall not now undertake to delimit. Solution of the possible difficulties in determining when the narrower and particular term "local affairs" is or is not within the more general and wider term of "state-wide concern," and the possible query whether such terms involve conflict or contradiction, must also all be left to the future.

·The words "local affairs and government" are perhaps, and in one view of the matter, a rather unfortunate choice of language. No standard is therein fixed for defining such term, nor is any help afforded by decisions from other jurisdictions under constitutional provisions aiming in the same direction.

On the other hand, however, and as we now view it, such a phrase, couched as it necessarily must or ought to be, in a document such as a constitution, in broad and general terms, should have a liberal construction looking toward virility rather than impotency.  To itemize or to detail in conferring such powers presents equal or greater difficulties, as is perhaps illustrated in the case of the home-rule amendment in New York.  There, after continuous efforts from 1910, an amendment was adopted in 1923 which is set out in full in *Browne v. New York,* 241 N. Y. 96, 106, 149 N. E. 211.  It expressly excepted school matters and specifically stated certain distinct subject matters intended to be included in the grant of legislative power to cities, and, as in that case stated (p. 121), the presence of such is an implied disclaimer of others; and largely upon such ground New York City was denied by that decision the right to engage in the business of running municipal busses as a common carrier of passengers.

In determining, as we now do, that the maximum height of buildings in a city is a local affair of such city and therefore within the field of legislative powers granted to cities and villages by such amendment, though such affair may also well be of "state-wide concern," we recognize:

That there are still matters of "state-wide concern" as to which no independent legislative power is thereby granted to municipalities.  For instance, as already squarely held in *State ex rel. Harbach v. Mayor, etc.* 189 Wis. 84, 206 N. W. 210, they cannot control or enter into the field of school matters, a subject so carefully and separately safeguarded by art. X, Const.  The same view was taken as to schools in *Niehaus v. State,* 111 Ohio St. 47, 54, 144 N. E. 433; there may also be many health regulations superior under general laws; so also exclusive control over methods and means of transportation, vested by general law in state administrative bodies (*Vanderwerker v. Supe-*

*rior,* 179 Wis. 638, 643, 192 N. W. 60; *Scheible v. Hogan,* 113 Ohio St. 83, 148 N. E. 581) ; and the same as to crimes (*Buchanan v. State* (Okla. Cr. App.), 236 Pac. 903), and possibly many other subjects which from their nature are state wide and not local within a proper construction of this amendment; but any such questions are not here presented or now decided.

We also recognize that many matters while of "state-wide concern," affecting the people and state at large somewhat remotely and indirectly, yet at the same time affect the individual municipalities directly and intimately, can consistently be, and are, "local affairs" of this amendment.

Furthermore, to be such "local affair" of city or village, it must be such an affair or subject matter as grows out of and is presented by and because of their being such city or village as distinguished from a rural or pastoral community. When a community becomes so thickly settled and congested that its best interest is served by incorporating as village or city, it has, from such very density of population, different and distinct problems to be solved than are the problems presented to rural or pastoral communities, even though many of the several problems presented to either class of communities may, nevertheless, be also of "state-wide concern."    This substantial difference in fact is well recognized in law, for to incorporate as a village the territory so proposing must have the characteristics of a village *in fact,* viz. urban as distinguished from territory merely agricultural, as was held in *State ex rel. Holland v. Lammers,* 113 Wis. 398, 415, 86 N. W. 677, 89 N. W. 501; *Fenton v. Ryan,* 140 Wis. 353, 357, 122 N. W. 756.

As applied to the situation here presented, we hold that though the height of buildings in cities is of state-wide concern under the rule heretofore recognized, that health and safety regulations are not merely for the occupants and visitors of the particular buildings but for the people of

that particular community and for the community at large (*Building Height Cases,* 181 Wis. 519, 526, 195 N. W. 544; *State ex rel. Carter v. Harper,* 182 Wis. 148, 154, 196 N. W. 451), yet nevertheless that the height of buildings in a particular community is a problem and affair which much more intimately and directly concerns the inhabitants of that community than the casual visitor or the other parts of the state, and it is therefore a "local affair" of such community within the amendment.

The *Building Height Cases, supra,* expressly recognized the substantial difference between a building in a congested community and one in a rural district, and held (p. 527) that the spirit of the law there involved did not affect the latter although the letter did. If, then, the subject matter of the height of a city's buildings were to be excluded from a city's "local affairs," there would seem to be no consistent theory other than one excluding such as relate to the width of highways, boulevards, sidewalks; the manner of laying water pipes and sewers; parking regulations; and the enormous number of matters subject to the ever-increasing spirit of regulation embodied in statutes, charters, and ordinances. The same would be true as to the regulations as to materials for paving of and the traffic regulations on the highways within the particular cities or villages, such highways being also for the use and disposal of the general public as distinguished from the residents of the particular community in which such highways are; and the same may be said as to very many of the other subjects of regulation by statute or ordinance.

Even under the construction which we have herein decided should be given to the grant of power to cities by this amendment, still there are left ample limitations and reservations upon such exercise of legislative powers.

The present constitutional restrictions as to debt limits, etc., are of course still preserved by the express, although

perhaps unnecessary, provision to that effect therein contained.

There is also preserved to the legislature some power of acting in any and all matters that may properly be considered parts of the local affairs or government of a city or village and that may or may not be also of state-wide concern.

We are expressly reserving for future determination any question that may arise as to the effect, under this amendment, of any law recognizing a classification of cities, such for instance as this Building Heights Law, sec. 343.461, Stats., *supra,* upon cities which take no action regarding such laws under the procedural statute, sec. 66.001, *supra.* We also reserve a decision upon the important question as to how far, if at all, this amendment does away with the right of the legislature to now enact laws differing in their effect or application to or in any of the several classes of cities.

The defendant was therefore warranted in passing the ordinance here assailed which sought to avoid as to it the application of sec. 343.461, *supra,* because the subject matter of such ordinance—no claim being asserted that such was an unreasonable exercise of its ordinance power—was clearly a local affair of the defendant city and within the field of its grant of legislative power by this amendment.

*By the Court.*—Order reversed.

CROWNHART, J., took no part.