ANN WALSH BRADLEY, J.
¶ 181. (dissenting.) In reflecting on the importance of an independent judiciary as a separate branch of government, former United States Supreme Court Chief Justice William Rehnquist called the authority to declare unconstitutional a law passed by legislature "probably the most significant single contribution the United States has made to the art of government."
I believe that the creation of an independent constitutional court, with the authority to declare unconstitutional laws passed by the state or federal legislatures, is probably the most significant single contribution the United States has made to the art of government.[1]
¶ 182. He emphasized the important role that courts serve in protecting the rights guaranteed under the Constitution. Courts serve as guardians of the constitutional rights of all people. Our challenge as a *107 court is to duly respect the prerogatives of the legislature as reflected in its legislative acts, while at the same time honoring our significant role. We must constantly guard against proper judicial restraint being transformed into improper judicial acquiescence.
¶ 183. In this case we are presented with constitutional challenges to Act 10. The majority aptly sets forth its results. However, it is difficult to find in the majority's lengthy opinion a discussion of the actual arguments and issues presented by the parties.
¶ 184. An actual issue presented by Madison Teachers is: Does Act 10 infringe on the associational rights of public employees to organize?[2]
¶ 185. Yet the majority reframes the issue to determine whether there is a constitutional right to collective bargaining and whether the State has an obligation to promote First Amendment rights.
¶ 186. An actual issue presented by the parties is: Does the provision in Act 10 prohibiting Milwaukee from making contributions to its employees' pension plans violate the Home Rule Amendment?
¶ 187. Rather than focusing on the provision at issue, the majority shifts the focus to the purpose behind Act 10 as a whole. It determines that because Act 10 deals generally with financial matters, the prohibition on Milwaukee's pension contributions is a matter of statewide concern.
¶ 188. An actual issue presented by the parties is: Does the prohibition on pension contributions violate the Contract Clause given that benefits are guaranteed by the Milwaukee Charter Ordinance?
*108 ¶ 189. By twisting the definition of benefits to exclude pension contributions, the majority thereby avoids any substantive analysis of the Contract Clause.
¶ 190. The result of the majority's dodge is the needless diminution of multiple constitutional rights:
• The right of freedom of association to organize is diluted as the majority has opened the door for the State to withhold benefits and punish individuals based on their membership in disfavored groups.
• Municipalities' right to self-govern as granted by the Home Rule Amendment rings hollow as the majority determines that when the State has budgetary difficulties, matters dealing with local finances are now matters of statewide concern, even absent any showing of an impact on the State budget.
• And the right to contract is undermined as the majority demonstrates its willingness to creatively interpret a contract in a manner permitting the State to disregard it.
¶ 191. I determine that the majority's failure to address the actual issues presented allows it to substitute analyses resulting in conclusions that countenance the violation rather than the protection of constitutional rights. Because I determine that Act 10 unconstitutionally infringes on protected rights, I respectfully dissent.
¶ 192. There are three main issues raised by the parties: (I) the Right To Associate; (II) the Home Rule Amendment; and (III) the Contract Clause. I address each in turn.
I. The Right To Associate
¶ 193. Madison Teachers asserts that Act 10 violates the First Amendment right of freedom of associa *109 tion by infringing on its right to organize.[3] Given that the State has conceded that the challenged provisions in Act 10 cannot survive such a constitutional challenge if a strict scrutiny review is applied, the majority has to avoid strict scrutiny to arrive at its result.[4] How does it do that? It jettisons the focus of its analysis.
¶ 194. Rather than addressing plaintiffs issue that Act 10 infringes on its constitutional right to organize into a collective bargaining unit, the majority erroneously asserts that plaintiff is claiming a right to bargain as a collective bargaining unit.[5] It then determines that no such right exists.
¶ 195. In rejecting Madison Teachers' purported claims, the majority stresses that "[g]eneral employees have no constitutional right to negotiate with their municipal employer." Majority op., ¶ 38. It further states that "collective bargaining ... is not constitution *110 ally protected." Id., ¶ 39. Accordingly, it determines that "the plaintiffs' associational rights are in no way implicated by Act 10's modifications to Wisconsin's collective bargaining framework." Id., ¶ 41.
¶ 196. In one instance, the majority appears to acknowledge the plaintiffs actual claim but then distorts it. The majority begins the sentence by correctly referencing "the 'right' the plaintiffs refer to — the right to associate with a certified representative." Id., ¶ 37. So far, so good. However, it then ends the sentence with a distortion of the claim, describing the right being asserted as a right "to collectively bargain on any subject." Id.
¶ 197. The majority is well aware that the plaintiff has never asserted that it has a constitutional right to collectively bargain, let alone bargain on any subject. In fact, elsewhere in its opinion, the majority acknowledges that the plaintiff is not arguing a constitutional right to bargain: "The plaintiffs have insisted at every stage of litigation in this case that they are not arguing a constitutional right exists to collectively bargain." Id., ¶ 39. Yet the majority persists in focusing its analysis on the right to bargain.
¶ 198. The plaintiffs actual argument is based on the well-established premise that there is a constitutional right to organize as a collective bargaining unit. In fact, the United States Supreme Court has declared it to be a fundamental right: "the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer ... is a fundamental right." NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 33 (1937) (emphasis added). Likewise, the Court has stated that the First Amendment most assuredly protects the right of work *111 ers to organize: "It cannot be seriously doubted that the First Amendment[] guarantees .. . the right [of workers] to gather together for the lawful purpose of helping and advising one another." Brotherhood of R.R. Trainmen v. Virginia, 377 U.S. 1, 5-6 (1964).
¶ 199. As early as 1902, the Wisconsin Supreme Court has similarly stressed the "sacredness" of the right of employees to organize. State ex rel. Zillmer v. Kreutzberg, 114 Wis. 530, 541, 90 N.W 1098 (1902). Against this background, the majority's failure to squarely address the plaintiffs argument is remarkable. In reaching its result the majority appears to ignore over a century's worth of jurisprudence and undermines a right long held sacred in our State.[6]
¶ 200. Madison Teachers' argument that Act 10 violates associational rights is twofold. First, it focuses on the provisions in Act 10 requiring collective bargaining units to hold annual recertification elections, eliminating fair share agreements, and prohibiting municipalities from withholding dues from employees' wages. It contends that these provisions violate its associational rights because they infringe on those rights by *112 punishing association with a collective bargaining unit. Second, it argues that the provision in Act 10 prohibiting municipalities from bargaining over anything other than an increase in base wages up to the amount of inflation is an unconstitutional condition.
¶ 201. Rather than considering whether Act 10 discourages the exercise of the associational right to organize, the majority pivots to a different issue advanced by the State and then analyzes that issue. It advances that the State is not required to subsidize speech, and ultimately concludes that the challenged provisions regarding fair share agreements, paycheck dues deductions, and annual recertification do not burden the exercise of associational rights. Majority op., ¶¶ 54, 59, 61.[7]
¶ 202. By pivoting to the issue of whether the constitution requires the State to subsidize speech, the majority avoids the actual argument advanced before this court: whether Act 10 infringes on the associational right to organize by discouraging membership in a collective bargaining unit. Given the void in the majority's analysis, I turn to address the actual issue.
¶ 203. The First Amendment protects not just against State prohibition of association, but also *113 against State punishment or penalty for the exercise of associational rights. See Smith v. Arkansas State Highway Emps., Local 1315, 441 U.S. 463, 464 (1979) ("The government is prohibited from infringing upon [First Amendment] guarantees either by a general prohibition against certain forms of advocacy, or by imposing sanctions for the expression of particular views it opposes."); Baird v. State Bar of Ariz., 401 U.S. 1, 6 (1971) ("The First Amendment's protection of association prohibits a State from. . . punishing [a person] solely because he is a member of a particular political organization or because he holds certain beliefs."). In other words, the State cannot "tak[e] steps to prohibit or discourage union membership or association." Smith, 441 U.S. at 466 (emphasis added).
¶ 204. The United States Supreme Court illustrated this principle in NAACP v. Alabama ex rel. Patterson, 357 U.S. 449 (1958). Patterson involved a State requirement that NAACP reveal its membership list. The court determined that the State action was "likely to affect adversely the ability of petitioner and its members to pursue their collective effort[s] [by] . . . inducting] members to withdraw from the Association and dissuad[ing] others from joining it." Id. at 462-63. Thus, because the requirement that NAACP reveal its membership list was not supported by a compelling government interest, the court determined that it was unconstitutional. Id. at 466.
¶ 205. Similarly, the provisions in Act 10 discourage organizing as a collective bargaining unit by increasing its cost. Wisconsin Stat. § 111.70(4)(d) requires collective bargaining units to hold recertification elections annually in which 51% of all eligible employees must vote in favor of recertification. In addition to the costs involved in educating employees about the *114 election and convincing employees to vote, collective bargaining units must pay a certification fee. Wis. Stat. § 111.70(4)(d)3.b.
¶ 206. Further, although collective bargaining units must provide benefits to all members, Act 10 eliminates fair share agreements requiring members to pay their proportionate share of the cost of providing those services.[8] Wis. Stat. § 111.70(l)(f), (2). Collective bargaining units' finances are also diminished by Wis. Stat. § 111.70(3g) which prohibits municipalities from withholding union dues from employees' wages.[9]
¶ 207. By making membership unduly expensive, these Act 10 provisions collectively infringe on the associational right to organize. There is no doubt that these provisions act to discourage membership. The majority's narrow focus on whether the State is required to facilitate free speech shifts the focus from this issue. In doing so, the majority avoids directly addressing the question of whether these provisions impermissibly punish the exercise of the right to associate.
¶ 208. The majority similarly avoids addressing Madison Teachers' second argument, that Act 10 creates unconstitutional conditions. Again, it simply reshapes the argument.
*115 ¶ 209. The majority reasons that because negotiating with employees is not constitutionally required, it cannot be a constitutional violation to withhold such benefits from members of collective bargaining units. Majority op., ¶ 37-38 (emphasis added). The focus of its analysis is deceptive as the doctrine of unconstitutional conditions does not look at whether the benefit is required. Regardless of whether the benefit is required, the doctrine focuses on whether an individual is required to give up a constitutionally protected right in order to obtain the benefit.
¶ 210. The doctrine of unconstitutional conditions provides that "the government may not deny a benefit to a person because he exercises a constitutional right." Koontz v. St. Johns River Water Mgmt. Dist., 133 S. Ct. 2586, 2594 (2013). This doctrine reflects the idea that "the Constitution's protection is not limited to direct interference with fundamental rights." Healy v. James, 408 U.S. 169, 183 (1972). Freedoms, such as the right to associate, "are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." Bates v. City of Little Rock, 361 U.S. 516, 523 (1960).
¶ 211. Even though there may be no constitutional right to a benefit, the State cannot premise receipt of that benefit upon a person foregoing a constitutionally protected right. Bd. of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 674 (1996). Such a condition effectively punishes the free exercise of constitutional liberties, accomplishing indirectly what the State cannot command directly. Sherbert v. Verner, 374 U.S. 398, 406 (1963).
¶ 212. The seminal Wisconsin case applying this doctrine is Lawson v. Housing Auth. of Milwaukee, 270 Wis. 269, 70 N.W.2d 605 (1955). In Lawson, the court held that it was impermissible for a federal statute to *116 condition federal low-income housing on tenants not being members of "subversive organizations." Id. at 274. This was true despite the fact that there was no constitutional right to federal low-income housing.
¶ 213. The court explained that if the government could defend a statute "on the ground that the plaintiff is being deprived thereby only of a privilege, and not of a vested right, there is extreme danger that the liberties of any minority group in our population, large or small, might be swept away." Id. at 275. In other words, once the government has decided to grant a benefit, it cannot condition that benefit on relinquishment of a constitutionally protected right.
¶ 214. The majority pays lip service to this doctrine, but then fails to actually apply it. Majority op., ¶¶ 29, 38. Its focus on whether the benefit itself is required belies any suggestion that the majority is following the precedent on unconstitutional conditions.
¶ 215. Act 10 is clear: if you have exercised your associational right to organize as a collective bargaining unit you lose your ability to negotiate over anything other than an increase in base wages up to the amount of inflation. Wis. Stat. §§ 111.70(4)(mb), 66.0506, 118.245. This is the textbook definition of an unconstitutional condition. By permitting such a statute to stand, the majority greatly dilutes the First Amendment protection on the right to freedom of association.
¶ 216. Because Act 10 infringes on associational rights to organize by discouraging and punishing membership in collective bargaining units, it can survive strict scrutiny only if it is narrowly tailored to meet a compelling government interest. The State has made no argument that Act 10 is narrowly tailored to meet a compelling government interest and has conceded that it cannot meet this standard. Accordingly, I conclude *117 that the challenged provisions of Act 10 violate the constitutional right of public employees to organize in a collective bargaining unit.[10]
II. Home Rule
¶ 217. Next, Madison Teachers challenges the provision in Act 10 which prohibits the City of Milwaukee from making pension contributions on behalf of its employees, Wis. Stat. § 62.623(1).[11] It alleges that this provision violates the Home Rule Amendment.[12]
*118 ¶ 218. The majority responds by shifting the focus to whether Act 10 as a whole implicates a matter of statewide concern. It determines that because the purpose of Act 10 is to alleviate "fiscal strain," the challenged legislation is primarily a matter of statewide concern. Based primarily on fiscal concerns, the majority concludes that Act 10 does not violate the Home Rule Amendment.[13] Id., ¶¶ 109,111-15. Over and over again the majority emphasizes that legislation implicating fiscal issues is a matter of statewide concern:
• "[S]tatewide legislation aimed at improving the fiscal health of the State budget is indisputably a general state concern." Id., ¶ 115.
• "[T]he legislature's determination in 1947 that pension and retirement plans are a local concern does not mean it is an accurate portrayal of how pension and retirement plans impact the fiscal realities of Wisconsin in 2014." Id., ¶ 127.
*119 • "The legislature has broad latitude to experiment with economic problems and we do not presume to second-guess its wisdom." Id., ¶ 119.
See also id., ¶¶ 111, 118, 120, 122. In other words, when the State has budgetary issues local finances are matters of statewide concerns, even absent any showing of impact on the State budget.
¶ 219. This determination is stunning, not just because of its breadth, but also because it runs counter to the history of the Home Rule Amendment and Milwaukee's pension system, ignores our precedent, and is unsupported by fact. The majority's result substantially strips municipalities of their right to self-govern as granted by the Home Rule Amendment because much of what municipalities do involves "fiscal matters."
¶ 220. The Home Rule Amendment grants cities and towns the authority to determine their own local affairs, subject only to "enactments of the legislature of statewide concern as with uniformity shall affect every city or every village." Wis. Const, art. XI, § 3, cl. 1. A review of its history demonstrates that it was enacted in response to calls "to decrease the role of the state legislature in establishing municipal governments and to provide cities and villages with greater authority to determine their own affairs." Kerry A. Burchill, Madison's Minimum-Wage Ordinance, Section 104.001, and the Future of Home Rule in Wisconsin, 2007 Wis. L. Rev. 151, 161-62; Robert W Hansen, Municipal Home Rule in Wisconsin, 21 Marq. L. Rev. 74, 76 (1937).[14]
*120 ¶ 221. Under the Home Rule framework, the funding of a city's pension plan has historically been viewed as primarily local in nature. The legislature recognized this when it authorized Milwaukee to establish its own Milwaukee Employee Retirement System (MERS). § 31(1), ch. 41, Laws of 1947. It expressly declared Milwaukee's pension system to be "a local affair" that should not be construed as a matter of statewide concern:
For purpose of giving to cities of the first class the largest measure of self-government with respect to pension annuity and retirement systems compatible with the constitution and general law, it is hereby *121 declared to be the legislative policy that all future amendments and alterations to this act are matters of local affair and government shall not be construed as an enactment of state-wide concern.
§ 31(1), ch. 441, Laws of 1947.
¶ 222. The majority's determination that the funding of Milwaukee's pension system is primarily a matter of statewide concern also ignores precedent. In State ex rel. Brelsford v. Ret. Bd. of the Policemen's Annuity & Benefit Fund, 41 Wis. 2d 77, 163 N.W.2d 153 (1968), a constitutional challenge was brought against a Milwaukee charter amendment that permitted retired police officers to receive pensions while working as school teachers. The court determined that pension funds for Milwaukee police officers "seemQ overwhelmingly to be a matter of predominate local concern." Id. at 87.
¶ 223. The court explained that "the state would have little interest in whether a retired policeman taught school in Milwaukee or in some other municipality. This is a matter of unique interest to Milwaukee." Id. Similarly, the court has described "the control of the locality over payments from the local purse" as one of a municipality's "most important" functions. Van Gilder v. City of Madison, 222 Wis. 58, 81-82, 267 N.W 25 (1936).[15]
*122 ¶ 224. As discussed in State ex rel Ekern v. City of Milwaukee, 190 Wis. 633, 641, 209 N.W. 860 (1926), a "local affair" is one "which much more intimately and directly concerns the inhabitants of that community than the casual visitor or the other parts of the state." The funding of Milwaukee's pension fund for its city employees fits within this description. The fund is "entirely self-reliant in both its management and funding." Majority op., ¶ 114. Accordingly, its funding has no demonstrable impact on other parts of the State.
¶ 225. Our jurisprudence is consistent with that of other states that have determined that compensating city employees is primarily a matter of local concern. See, e.g., Bruckshaw v. Paolino, 557 A.2d 1221, 1224 (R.I. 1989) ("the regulation of city employee pensions is of local concern"); N. Ohio Patrolmen's Benevolent Ass'n v. Parma, 402 N.E.2d 519, 525 (Ohio 1980) ("the ability to determine the salaries paid to city employees is a fundamental power of local self-government."); City of Colorado Springs v. State, 626 P.2d 1122, 1127 (Colo. 1980) ("Although the establishment of firemen's pension plans is of statewide concern, the extent to which a home rule city must provide financial support for such a plan is a question intimately involving city budgeting and the assessment and collection of taxes for municipal purposes. These are local and municipal matters."); Sonoma Cnty. Org. of Public Emps. v. Cnty. of Sonoma, 591 P.2d 1, 13 (Cal. 1979) ("the wages paid to employees of charter cities as well as charter counties is a matter of local rather than statewide concern."); Crawford v. City of Chicago, 710 N.E.2d 91, 98 (Ill. App. Ct. 1999) ("The power to extend to its employees both compensa *123 tion and benefits is ineluctably essential to the operation of local governmental units such as the City in the present case.").[16]
¶ 226. Further undermining its analysis, the majority relies on the broad purpose behind Act 10, rather than the purpose behind the specific statute at issue, Wis. Stat. § 62.623(1). It does so absent any facts in the record showing that Wis. Stat. § 62.623(1) does anything to achieve Act 10's purpose or is in any way related to the State budget. Majority op., ¶¶ 118-23.
¶ 227. The State presented no credible evidence showing that Milwaukee pension expenditures have any impact on the State budget. Although the State pointed to its "shared revenue" program, the amounts provided by the State to a municipality under that program are not based on the municipality's budget or expenditures. See Wis. Stat. §§ 79.02, 79.035.
¶ 228. The shared revenue program does not show a relationship between city contributions to city employee pension plans and the State budget. Indeed, even the majority recognizes that the administration of a city's retirement system is "entirely self-reliant in both its management and funding." Majority op., ¶ 114. There are no facts in the record to determine that Milwaukee's funding of employee pensions has any effect on statewide financial concerns. Accordingly, the majority's determination that Wis. Stat. § 62.623 concerns primarily a statewide matter is unsupported.
*124 ¶ 229. Having determined that Wis. Stat. § 62.623 is primarily a statewide matter, the majority declines to analyze what it describes as the second step of a Home Rule challenge: uniformity. Id., ¶ 94. After devoting several paragraphs to expound on uniformity, id., ¶¶ 91-95, 98-99, 102-09, the majority makes no attempt to apply its uniformity analysis to the facts of this case. Without any discussion or explanation the analysis simply ends. This presents a significant void in the majority's analysis.
¶ 230. The issues of when and whether a statute applying to a specific set or class of cities is uniform requires a nuanced analysis. State ex rel. Michalek v. LeGrand, 77 Wis. 2d 520, 530 n.16, 253 N.W.2d 505 (1977). The concern of targeting individual cities is echoed throughout case law as the court has grappled with the problem of uniformity in the home rule context. See, e.g., id.; State ex rel. Sleeman v. Baxter, 195 Wis. 437, 448, 219 N.W 858 (1928); Ekern, 190 Wis. at 642. The majority opinion cannot simply wave away these concerns by abruptly ending its analysis. The hole left in the majority's application on this issue further renders its conclusion infirm.
¶ 231. By determining that Wis. Stat. § 62.623(1) primarily concerns a statewide matter because it deals with finances, the majority ignores the history of the Home Rule and the Milwaukee pension system, as well as relevant case law, and has greatly narrowed the scope of the Home Rule Amendment. Further, its focus on the purpose behind a broad act, absent any evidence that the specific legislation is actually aimed at affecting that purpose, gives the legislature more leeway to legislate on local issues than was intended by the Home Rule Amendment.
*125 ¶ 232. Under the majority's holding it is hard to imagine what is left for municipalities to govern autonomously. Accordingly, for the reasons discussed above, I conclude that the majority has not saved Wis. Stat. § 62.623(1) from its constitutional challenge.
III. Contract Clause
¶ 233. Madison Teachers also asserts that the provision in Act 10 prohibiting Milwaukee from making pension contributions on behalf of its employees violates the Contract Clause of the Wisconsin Constitution.[17] It argues that the Milwaukee Charter Ordinance constitutes a contract guaranteeing its right to benefits. Because Act 10 prohibits the benefit of employer funded pension contributions, it contends that Act 10 interferes with its contract rights.
¶ 234. By twisting the definition of the word "benefit," the majority determines that employer pension contributions are not really benefits at all. As a consequence it is able to exclude the employer contributions, determining that they are not part of the benefit contract as provided in the Milwaukee Charter Ordinance. Accordingly, it concludes that the provision in Act 10 prohibiting Milwaukee from making pension contributions does not violate the Contract Clause.
¶ 235. This analysis is problematic in two respects: (1) it overlooks the language of the Milwaukee Ordinance and (2) it is contrary to the ordinary meaning of the term "benefit." By overlooking language in the ordinance and by demonstrating its willingness to creatively interpret contract terms to avoid finding a *126 violation of the Contract Clause, the majority undermines the right to contract.
¶ 236. Under the Contract Clause, "[n]o . . . law impairing the obligation of contracts, shall ever be passed." Wis. Const, art. I, § 12. Although the Milwaukee Charter Ordinance provided that the city will make pension contributions to MERS on behalf of its employees, the legislature included in Act 10 provisions prohibiting Milwaukee from making those contributions. Wis. Stat. § 62.623. Madison Teachers asserts this statute violates the Contract Clause.
¶ 237. Milwaukee's Charter Ordinance provides that Milwaukee will fund member pension contributions to MERS on behalf of its employees. Specifically, it states that "the city shall contribute on behalf of general city employees 5.5% of such member's earnable compensation." Mil. Ch. Ord. § 36-08-7-a-l.
¶ 238. Next, the ordinance states that employees shall have a benefit contract as provided by the ordinance that shall not be impaired by future legislation:
Every such member... shall thereby have a benefit contract in ... all... benefits in the amounts and upon the terms and conditions and in all other respects as provided under this [ordinance] . .. and each member and beneficiary having such a benefit contract shall have a vested right to such .. . benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.
Mil. Ch. Ord. § 36-13-2-a.
¶ 239. Then, the ordinance states that employees have a vested contract right to their benefits:
Every member, retired member, survivor and beneficiary who participates in the combined fund shall have a vested and contractual right to the benefits in the *127 amount and on the terms and conditions as provided in the law on the date the combined fund is created.
Mil. Ch. Ord. § 36-13-2-g.
¶ 240. The majority acknowledges that those provisions create a contract right to pensions, but determines that they do not create a contract right to pension contributions. Majority op., ¶¶ 144-45, 156-57. It notes that "[flor a legislative enactment to be considered a contract, 'the language and circumstances [must] evince a legislative intent to create private rights of a contractual nature enforceable against the State.'" Id., ¶ 142 (quoting Wisconsin Prof'l Police Ass'n, Inc. v. Lightbourn, 2001 WI 59, ¶ 145 n.188, 243 Wis. 2d 512). Reasoning that there is no indication that the city council intended to classify pension contributions as benefits, the majority determines that there is no contractual obligation for Milwaukee to make those payments. Id., ¶¶ 150, 153, 158.
¶ 241. The majority supports its strained interpretation of the term "benefit" with a cursory reading of Milwaukee's Charter Ordinance. It suggests that the term "benefits" as used in the ordinance, cannot mean pension contributions because Milwaukee's obligation to pay employee contributions "is conspicuously absent from [the section of the Milwaukee Charter Ordinance titled "Benefits," Mil. Ch. Ord. § 36-05]." Id., ¶ 152.
¶ 242. In reaching its result, the majority overlooks the very first section in the benefits chapter of the Milwaukee Charter Ordinance. Milwaukee Charter Ordinance § 36-05-1-d specifically incorporates Mil. Ch. Ord. § 36-08-7, which requires the city to fund the 5.5% member contributions of its employees. It states:
The member shall be guaranteed that if the total benefit in the form of a monthly retirement allow *128 anee . .. does not equal the amount of the member's contributions as provided for in s. 36-08-7 [requiring the city to fund those 5.5% member contributions],. .. then the balance of the member's contributions with interest shall be payable in lump sum amount to a designated beneficiary or to an estate entitled thereto.
Mil. Ch. Ord. § 36-05-1-d (emphasis added).[18]
¶ 243. Indeed, the majority's assertion that pension contributions are not benefits is contrary to the common use of the term "benefits." See, e.g., State ex rel. *129 City of Manitowoc v. Police Pension Bd., 56 Wis. 2d 602, 612A, 203 N.W.2d 74 (1973) ("[I]n view of modern day employment inducements, fringe benefits such as insurance premiums, pension fund contributions and perhaps others are to be included in the formula for calculating pension benefits for police and firemen."); Titan Tire Corp. of Freeport, Inc. v. United Steel, Paper, & Forestry, Rubber, Mfg., 734 F.3d 708, 731 (7th Cir. 2013) ("They were also receiving an array of fringe benefits, including health care and pension contributions."); City of Ft. Wayne v. Ramsey, 578 N.E.2d 725, 728 (Ind. Ct. App. 1991) ("employer-paid pension contributions are in the nature of a fringe benefit").
¶ 244. Not only is the majority's assertion contrary to the common use of the term, it is contrary to the majority's common experience. Every year the State of Wisconsin sends to its employees a "Statement of Annual Benefits."[19] The benefit of employer pension contributions is among the several benefits listed. For executive branch employees, pension contributions = benefits. For legislative branch employees, pension contributions = benefits. As the majority well knows, for judicial branch employees, pension contributions = benefits. Every State of Wisconsin paycheck stub lists an employer paid pension contribution as a benefit.
¶ 245. Nevertheless, the majority persists in twisting the definition of benefit allowing it to creatively interpret a contract in a manner permitting the State to disregard it. The majority rests its conclusion that there is no violation of the Contract Clause on the *130 analytically unsupportable premise that for Milwaukee, an employer pension contribution is not a benefit.
¶ 246. The majority's strained reading of the term "benefit," excluding employer pension contributions from its definition, is contrary to the use of the term "benefit" in the Milwaukee Charter Ordinance and the common use of the term. Accordingly, its analysis of whether the prohibition on employer contributions in Wis. Stat. § 62.623 violates the Contract Clause does not withstand scrutiny. Allowing Wis. Stat. § 62.623 to stand undermines the protections of the Contract Clause.
IV
¶ 247. In sum, the majority's failure to address the actual issues presented in this case allows it to reach results that countenance the needless diminution of multiple constitutional rights. The right to freedom of association is diluted as the majority has opened the door for the State to withhold benefits and punish individuals based on their membership in disfavored groups. Municipalities' right to self-govern as granted by the Home Rule Amendment now rings hollow as the majority determines that when the State has budgetary concerns, anything dealing with local finances is a statewide matter. And the right to contract is undermined as the majority demonstrates its willingness to creatively interpret a contract in a manner permitting the State to disregard it.
¶ 248. For the reasons set forth above, I determine that Act 10 unconstitutionally infringes on protected rights. Accordingly, I respectfully dissent.
*131 ¶ 249. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 Chief Justice William Rehnquist, Remarks at the Symposium on Judicial Independence, University of Richmond T. C. Williams School of Law (Mar. 21, 2003) (on file with the Public Information Office, U.S. Supreme Court), available at www.supremecourt.gov/publicinfo/speeches/viewspeeches.aspx? Filename=sp_03-21-03.html.

 For purposes of this dissent I use "Madison Teachers" to refer to the plaintiffs collectively.

 The First Amendment of the United States Constitution provides:
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

 Under a strict scrutiny review, State action infringing on First Amendment rights will be upheld only if it is narrowly tailored to meet a compelling government interest. Gard v. State Elections Bd., 156 Wis. 2d 28, 44, 456 N.W.2d 809 (1990).

 The majority spends an inordinate amount of ink attacking the dissent rather than attacking the actual associational issue. Normally the role of the majority opinion is to expound on the arguments of the parties and the law, giving only brief attention to the comments of the written dissent. It is unclear if the majority does this in an attempt to deflect attention from its failure to address the associational right to organize. Or, if it is because the majority recognizes that the arguments of the dissent cannot go unaddressed.

 The majority denies stating that employees do not have a constitutional right to organize. Majority op., ¶ 46. However, its analysis belies this assertion. Madison Teachers argues that Act 10 unconstitutionally interferes with associational rights by burdening and penalizing general employees who elect to organize in a collective bargaining unit. Although the majority acknowledges that at least one of the provisions burdens labor organizations, id. ¶ 80, it determines that the challenged provisions of Act 10 do not burden associational rights "because in each instance, there is no constitutional associational right implicated." Id., ¶ 70. Indeed, it stresses this point, stating it "is vital and bears repeating: the plaintiffs' associational rights are in no way implicated by Act 10's modification to Wisconsin's collective bargaining framework." Id., ¶ 41.

 The majority relies heavily on Wis. Educ. Ass'n Council v. Walker, 705 F.3d 640 (7th Cir. 2013), for its position. Majority op., ¶ 68. However, that case is distinguishable because it considered a different issue than is presented here. Wis. Edu. Ass'n Council examined whether Act 10 burdened the free speech rights of collective bargaining units. 705 F.3d at 645-53. The petitioners asserted that the prohibition on dues deductions constituted viewpoint discrimination because it was imposed only on those collective bargaining units that did not endorse Governor Walker in the prior election. The court did not consider whether Act 10 burdened the right of individuals to organize in a collective bargaining unit.

 Although the majority questions the constitutionality of fair share agreements, majority op., ¶ 58, the United States Supreme Court recently affirmed that fair share agreements for "full-fledged state employees" are constitutionally permissible. Harris v. Quinn, 573 U.S. _, *29 (June 30, 2014). Harris dealt with a challenge to fair share agreements brought by personal assistants. The court determined that because personal assistants were not full-fledged public employees they could not be compelled to make fair share payments.

 It is notable that the majority recognizes this as a burden in its discussion of the equal protection claims. Majority op., ¶ 78.

 Madison Teachers alleges that Act 10 also violates the equal protection clause. It points to the fact that Wis. Stat. §§ 111.70(4)(mb), 66.0506, and 118.245 prevent collective bargaining units from negotiating anything other than base wage increases up to the amount of inflation. Non-members of collective bargaining units are not subject to this restriction. Further, Wis. Stat. § 111.70(3)(g) prohibits municipalities from withholding dues for collective bargaining units. There is no similar restriction preventing municipalities from withholding dues for other types of organizations.
As discussed above, the right to organize in a collective bargaining unit is encompassed in the fundamental right to associate protected by the First Amendment. See supra, ¶¶ 18-19. The challenged provisions of Act 10 implicate those associational rights because they treat employees that are members of a collective bargaining unit differently than employees that are not members of collective bargaining units. As these provisions of Act 10 implicate the fundamental right to associate, strict scrutiny, rather than rational basis review, should be applied to evaluate whether Act 10 violates the equal protection clause.

 Wisconsin Stat. § 62.623(1) provides:
Beginning on July 1, 2011, in any employee retirement system of a 1st class city.. . employees shall pay all employee required contributions for funding benefits under the retirement system. The employer may not pay on behalf of an employee any of the employee's share of the required contributions.

 The Home Rule Amendment provides:
*118 Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village.
Wis. Const, art. XI, § 3, cl. 1.

 I acknowledge that the majority references other justifications for why Wis. Stat. § 62.623 affects a matter of primarily statewide concern. However, the discussion that the majority devotes to these other justifications is minor to that compared with the repeated and much discussed primary justification, i.e., the fiscal strain makes this a matter primarily of statewide interest.
In a single paragraph the majority mentions the State's historic role in matters affecting the employer-employee relationship. Majority op., ¶ 115. In another single paragraph it touches upon the State's obligation to maintain a functioning civil service system. Id., ¶ 118. Finally, it takes two short paragraphs to mention the scope of Act 10 as justification. Id., ¶¶ 121-22.

 Prior to its enactment, the Home Rule Amendment was touted by multiple newspapers which emphasized the necessity of local control of local affairs. One journal explained: "the *120 legislature of Wisconsin is gradually but surely taking away the rights of municipalities to govern themselves. The matter has reached the point today where democracy is in danger of being replaced by imperialism." Gas Tax Wanted Home Rule Too, Stevens Point Daily Journal, June 14, 1924, at 6.
Similar sentiments were expressed in other newspapers. See, e.g., Joseph E Harris, Questions and Answers, Madison Capital Times, Jan. 19, 1924, Saturday Afternoon Ed., at 9 ("Home rule secures to cities and villages a larger share in the control over matters of purely local concern. It frees the city or village from a considerable amount of state interference and regulation."); Home Rule, Wisconsin Rapids Daily Tribune, Oct. 29,1924, at 4 ("The meaning of the amendment is briefly stated by the legislative committee of the Milwaukee common council, which is working for its adoption, as follows: The home rule amendment if passed will give villages and cities in Wisconsin broader self-governing powers and leave local affairs to the local governing bodies, without first seeking the authority from the legislature.").
Public statements intended to persuade voters during the ratification process inform the interpretation of a constitutional amendment. Appling v. Walker, 2014 WI 96, ¶¶ 28-37, _Wis. 2d _, 853 N.W.2d 888; see also Dairyland Greyhound Park, Inc. v. Doyle, 2006 WI 107, ¶ 19, 295 Wis. 2d 1, 719 N.W.2d 408.

 Van Gilder created an exception to this general rule for the salaries of police officers, noting that "the preservation of order, the enforcement of law, the protection of life and property, and the suppression of crime are matters of state-wide concern." Van Gilder v. City of Madison, 222 Wis. 58, 76, 267 N.W. 25 (1936). As discussed above, this exception did not extend to police pension funds. State ex rel. Brelsford v. Ret. Bd. of the Policemen's Annuity & Benefit Fund, 41 Wis. 2d 77, 87, 163 N.W.2d 153 (1968).

 See also Rebecca Hanner White, Robert E. Kaplan, & Michael W Hawkins, Ohio's Public Employee Bargaining Law: Can it Withstand Constitutional Challenge?, 53 U. Cin. L. Rev. 1, 31 (1984) ("The establishment of wages, hours, and other terms and conditions of employment and decisions pertaining to hiring, promotion, retention, discipline and dismissal of employees are fundamental aspects of local government.").

 The Contract Clause provides: "[n]o bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed." Wis. Const, art. I, § 12.

 The majority appears to either dismiss or overlook additional sections of the Ordinance: "Separation Benefits," Mil. Ch. Ord. § 36-05-6-6, and "Ordinary Death Benefit," Mil. Ch. Ord. § 36-05-6-10. Both likewise reference Milwaukee's contributions to the pension funds. Both reference "accumulated contributions," which is a defined term that incorporates the 5.5% city funded member contributions as set forth in Mil. Ch. Ord. § 36-08-7.
The Separation Benefits provision states: "Should a member cease to be an employee ... he or she shall be paid his or her accumulated contributions as they were at date of separation from service." Mil. Ch. Ord. § 36-05-6-6 (emphasis added). Similarly, the Ordinary Death Benefit provision states: "Upon receipt of proper proofs of death ... his or her accumulated contributions shall be paid to such person, or such trustee, if any, as he or she has nominated." Mil. Ch. Ord. § 36-05-06-10 (emphasis added).
"Accumulated contributions" is a defined term in the ordinance, referring to "the sum of the contributions in the member's account, as provided for in s. 36-08-7-i." Mil. Ch. Ord. § 36-02-1. Section 36-08-7-i of Milwaukee's Charter Ordinance states in relevant part that "[t]he member's account shall consist of those member contributions deposited in accordance with pars... b." Again, paragraph b requires Milwaukee to make contributions on behalf of its employees into their pension account. Mil. Ch. Ord. § 36-08-7-b. Thus, the majority's reliance on the absence of employer contributions from the benefits chapter of the Milwaukee Charter Ordinance appears misplaced.

 Dep't of Employee Trust Funds, WI Retirement System, Form No. ET-7365.